PHILLIP A. TALBERT
Acting United States Attorney
JEFFREY A. SPIVAK
Assistant United States Attorney
United States Courthouse
2500 Tulare Street, Suite 4401
Fresno, California 93721
(559) 497-4000 Telephone
(559) 497-4099 Facsimile

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $147,900.00 IN U.S. CURRENCY,<br><br>Defendant. | Case No.<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

The United States, by and through its undersigned attorney, alleges as follows:

**Nature of Action**

1. This is a civil action *in rem* to forfeit to the United States approximately $147,900.00 in U.S. Currency ("the Defendant Currency") pursuant to 21 U.S.C. § 881(a)(6), on grounds that the Defendant Currency is a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq*.

2. The Defendant Currency was seized on October 24, 2015, at Interstate 5 and Jayne Avenue in Fresno, California and is in the custody of the United States Marshals Service, Eastern District of California.

///

///

**Jurisdiction and Venue**

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881.

4. This district is a proper venue pursuant to 28 U.S.C. § 1395, because the United States' claim accrued in this district and the property to be forfeited was found in this district.

5. Pursuant to Federal Rule of Civil Procedure, Rule 9(h), this case is designated as a case within the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. This case is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and pursuant to Rule G(9), trial is to be to the Court unless any party demands trial within 14 days of the service of this complaint in compliance with Federal Rules of Civil Procedure, Rule 38.

**Background of Investigation**

6. On October 24, 2015, at about 6:00 p.m., a Fresno County Sheriff Deputy was traveling southbound on Interstate 5, approaching Jayne Avenue, when he observed a silver Honda Odyssey (California license #7LEH945) following too closely to the vehicle directly in front of it, in violation of California Vehicle Code § 21703. The Honda was traveling in the number two lane at a speed of about 70 mile per hour (mph). The deputy followed behind the Honda in the number two lane at about the same rate of speed. The Honda approached a smaller four-door sedan which traveled at about 65mph in the number two lane. As the Honda approached the sedan, it came within about 30 feet of the small sedan. Based on training and experience, and consistent with the California Vehicle Code, traveling at this rate of speed and distance behind other vehicles can cause an accident if the followed vehicle were to suddenly apply its brakes. The Honda stayed within this 30-foot distance for about a half mile. There was no other traffic in the number one lane which prevented the Honda from changing lanes.

7. As the deputy prepared to initiate a traffic stop on the Honda, the Honda's turn signal light was activated and indicated movement to the number one lane. The Honda then quickly changed lanes to the number one lane. From his position behind the vehicle, the deputy observed a dark colored SUV traveling at a rate of about 75mph in the number one lane. When the Honda made its lane change, the SUV immediately applied its brakes to keep from traveling too close behind the Honda. This unsafe lane change was in violation of California Vehicle Code § 21658(a).

///

8. The deputy moved behind the Honda and conducted a traffic stop. The Honda yielded to the median on the left side in violation of California Vehicle Code § 21806(a). The deputy made contact with the driver and sole occupant of the Honda, Ying Yang (hereafter "Yang") and advised Yang of the purpose for the stop. Yang presented the deputy with a paper "Interim Driver License" issued from the State of California and a New York Driver license (707541070) with a hole punched through the license. At that time, a sergeant with the Fresno County Sheriff's Office arrived to provide assistance.

9. The deputy asked Yang where there was anything illegal in his vehicle and Yang stated that there was not. When asked whether Yang would mind if the vehicle was searched, Yang answered, "No," and exited the vehicle from the driver's side door. Yang then opened the driver's side rear sliding door and stated, "Go ahead." As the van door was opened, the deputy observed that the middle row of seats had been removed from within the vehicle. When asked why the seats were taken out, Yang stated that earlier he moved a television.

10. Yang was asked to stand by the patrol vehicle while the search was conducted. Yang did as he was asked. Yang was not handcuffed.

11. The deputy observed a factory manufacturer's storage area in the floorboard of the vehicle. The storage area was situated in the middle of the vehicle, right behind the front seats. The storage area was opened and the deputy observed a pair of tennis shoes and a black and blue Bloomingdales paper bag. As the deputy reached for the bag, he observed that underneath the bag was a "Physician's Statement & Recommendation" for Ying Yang.

12. The deputy opened the paper bag and observed a white plastic bag tied in a knot. In the white plastic bag, the deputy observed a large amount of U.S. currency, packaged in $100 bills. The deputy opened the plastic bag and observed that the currency had been wrapped with two separate, slightly translucent, white plastic bags. The deputy removed the white bag from the Bloomingdales bag, and a Medical Marijuana Recommendation Identification card fell out of the bag. The card was issued to Ying Yang on September 15, 2015.

13. Both plastic bags were opened and the deputy observed three large bundles of currency wrapped in rubber bands. On top of the bundles of currency was a handwritten note on a torn piece of paper. The note appeared to read, "147,000."

14. Yang was asked whether the money belonged to him. Yang said that it did. When asked how much money was in the bag, Yang stated, "$140,000."

15. The deputy resumed his search of the vehicle and located a notepad on the center console. The notepad appeared to have some notations with both dollar amounts and some type of Chinese writing. In the back storage area, behind the rear seat, the deputy located a one-gallon container of liquid fertilizer with the label "Bud Ignitor."

16. No luggage or suitcases were found inside the vehicle.

17. Yang was advised that detectives would soon arrive to speak with him about the currency. Yang was seated in the back seat of the patrol vehicle with the window down. Yang was not handcuffed at any time. Yang was given several opportunities to get out of the vehicle, smoke cigarettes, and stretch.

**Positive Alert to the U.S. Currency**

18. At about 8:00 p.m., a narcotic canine detective arrived and utilized the narcotic detecting canine "Kash" to conduct a sniff search for the presence of the odor of narcotics.

19. "Kash" is approximately a four year old German Shepherd and trained as a Narcotic Detection K-9. Both Kash and his handler are employed by the Fresno County Sheriff's Department, State of California. Kash has been employed since April of 2013; Kash's handler has been employed since March of 2001 and assigned to the narcotics division since March of 2008. The detective has been Kash's handler since April 2013.

20. "Kash" was trained by Mr. Carrie Lindgren of Vigilant Canine Services International (V.C.S.I.) in Red Bluff, California. Mr. Lindgren has over twenty-seven years of K-9 handler instruction. Mr. Lindgren is considered to be an expert in the training, handling and use of drug detection dogs in state court.

21. The detective received narcotic odor detection training from Vigilant Canine Services International (V.C.S.I.). The detective and Kash have received over 250 hours of ongoing training. The detective and Kash participate in monthly maintenance training. The detective and Kash are certified annually by a California P.O.S.T. evaluator.

22. Kash has been trained to detect the scent of the following narcotics; Marijuana, Cocaine, Methamphetamine, Opium, and Heroin. Kash will alert by passively alerting to the scents of the above-

mentioned narcotics.

23. Since being placed into service Kash has alerted to areas found to contain (after analysis) various amounts of the above mentioned narcotics from numerous pounds to grams. Kash's alerts have resulted in the seizure of over 2 pounds of cocaine, 40 pounds of methamphetamine, 468 pounds of marijuana, 8 pounds of heroin and 4 pounds of opium.

24. The detective was advised by the deputy of the nature of the traffic stop and that Yang had provided consent to the search the vehicle. The detective conducted a safety inspection of the vehicle for anything that could cause potential harm to Kash. Kash was then directed to begin his sniff at the exterior of the vehicle. Kash commenced his search at the front left corner of the vehicle, and moved to the passenger's sliding door. The detective opened the driver's side door and the passenger's sliding door and allowed Kash to enter the vehicle. Kash went to the rear passenger floorboard area and continued his search. Kash sniffed directly above a manufactured storage compartment located on the floorboard behind the center console and gave a positive and final response to the odor of narcotics. The compartment was opened and Kash placed his head inside the compartment and gave a positive and final response to the odor of narcotics on a white plastic grocery bag inside the compartment.

**<u>Interview of Ying Yang</u>**

25. At approximately 8:00 p.m., a second deputy arrived on scene to provide assistance. The second deputy was briefed by the initial deputy on the nature of the traffic stop and of the discovery of the currency concealed in the Honda's floorboard. The second deputy contacted Yang and determined that he spoke English but that Yang's dominant language was Cantonese. The second deputy contacted a general mobile interpretation service through AT&T Translator, and was put in touch with Flora #225817, who was fluent in Cantonese. The second deputy had Flora translate his conversation with Yang to Cantonese for Yang. While speaking with Yang, Yang gave a confused description of his trip and the reason for his possession of the currency. Yang's story was inconsistent and vague. The detective made efforts to clarify certain details but to no avail.

26. The second deputy asked Yang from where he was coming. Yang stated that he was coming from Oakland and driving to San Gabriel. Yang stated that he was in Oakland just for the day. When asked what he was doing with so much money in his car, Yang replied that back in 2009 he was

living in New York and was running a restaurant. Yang explained that he loaned a friend of his, by the name of Pak, several supply items for which Pak never paid Yang. Initially, Yang tried to explain that all of the money did not belong to him but only part of it did. Yang stated that some of the money was from Pak and that some belonged to other people to whom Yang owed money. Yang then changed his story and said all of the money belonged to him. Yang was then asked if he knew Pak from New York, whether Yang had lent Pak the supplies in New York, and how Yang found out that Pak was in California with money for Yang to collect. Yang stated that he knew Pak was in California and that he had gone to Oakland to pick up the money. When asked whether he met with Pak to pick up the money, Yang stated that he did not meet with Pak. Yang stated he contacted Pak and Yang was supposed to meet at an unknown parking lot where a subject he only knew of as "Jong" arrived and gave Yang the money. Yang continued by saying he does not know Jong and only met him that day.

27. Yang was asked whether if he lived at present in California or in New York. Yang stated that he spent most of his time in New York but stayed in California. Yang was asked how he planned to move the money from California to New York. Yang then changed his story again and said the money was to be used for a down payment on a house and for gas. Yang also stated he was trying to bring his wife and child from China to the United States. The second deputy asked Yang where he worked, which was difficult for Yang to explain. All the deputy could get from Yang was that he worked as a truck driver for a warehouse.

28. Yang was then asked why his Medical Marijuana recommendation was in the same bag as the money. Yang did not reply and only said he had been involved in a car accident and now takes marijuana for pain. Yang was asked whether the money was from the sales of narcotics which Yang said it was not. Yang was told that his story about some unknown person that simply handed over money to Yang in a parking lot was not believable. When asked how much money he had in his possession, Yang answered that he had $150,010.00. Yang was told that his story was difficult to believe. Yang was advised of the positive canine alert to the presence of the odor of narcotics on the money. Yang was advised that pay/owe sheets were observed in the vehicle along with fertilizer used by marijuana cultivators. Yang was further told that the money would be confiscated for asset forfeiture proceedings. Yang was informed that if he had receipts from his business and tax returns from the IRS that he could

appear in court and explain to the judge that the money was from a legitimate business transaction.

29. Based on the above details and training and experience, law enforcement believed the currency to be from the sales of narcotics or some other type of contraband. Yang signed a receipt for the seizure currency. After opening the packaging, the detective observed a white envelope that had been torn and the number 147,900 written in green ink on the torn envelope. This number was consistent with the total amount of money the detectives seized from Yang.

**FIRST CLAIM FOR RELIEF**
**[21 U.S.C. § 881(a)(6)]**

30. The United States repeats and realleges each and every allegation set forth in the above paragraphs.

31. The Defendant Currency constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, and proceeds traceable to such an exchange, and was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq*.

32. As a result of the foregoing, the Defendant Currency is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff prays that:

1. Process issue according to the procedures of this Court in cases of action *in rem*;

2. Any person having an interest in the Defendant Currency be given notice to file a claim and to answer the complaint;

3. This Court enter a judgment of forfeiture of the Defendant Currency to the United States; and

4. For such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 10, 2016

PHILLIP A. TALBERT
Acting United States Attorney

/s/ Jeffrey A. Spivak
JEFFREY A. SPIVAK
Assistant United States Attorney

**VERIFICATION**

I, Robert Perez, hereby verify and declare under penalty of perjury that I am a Federally Deputized Task Force Agent with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and belief are in the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Federally Deputized Task Force Agent of the Drug Enforcement Administration.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: June 10, 2016

/s/ Robert Perez
ROBERT PEREZ
Federally Deputized Task Force Agent
Drug Enforcement Administration
(Original signature retained by attorney)