# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY $147,900.00 IN U.S. CURRENCY,<br><br>Defendant.<br>_____/ | **CASE NO. 1:16-cv-00805-SKO**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE THE CLAIM AND ANSWER OF YIN YE YANG AND GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>**(Doc. 22)** |

## I. INTRODUCTION

In this in rem forfeiture action, Plaintiff United States of America (the "Government" or "Plaintiff") filed a Motion to Strike the Claim and Answer filed by Yin Ye Yang ("Yang" or "Claimant") on the basis that Yang did not provide Court-ordered discovery. (Doc. 22.) In the Motion, the Government also seeks an entry of default judgment against Yang and a final judgment of forfeiture against all known and unknown potential claimants to the Approximately $147,900.00 in U.S. Currency (the "Defendant Currency"). No opposition to the Government's motion has been filed, and the time to file an opposition has expired. The Court reviewed the motion and supporting document and found the matter suitable for decision without argument

pursuant to Local Rule 230(g); thus the May 24, 2017, hearing was vacated. (Doc. 24.) For the reasons set forth below, the Court GRANTS the Government's Motion.[1]

## II.      FACTUAL BACKGROUND[2]

On June 10, 2016, the Government filed a complaint alleging that, on October 24, 2015, a Fresno County Sheriff Deputy was traveling southbound on Interstate 5, approaching Jayne Avenue in Fresno County, California, when he observed a silver Honda Odyssey (California license #7LEH945) following too closely to the vehicle directly in front of it, in violation of California Vehicle Code § 21703. (Doc. 1. ("Compl.") ¶6.) As the deputy prepared to initiate a traffic stop on the Honda, the Honda quickly and unsafely changed lanes in violation of California Vehicle Code § 21658(a). (*Id.* ¶ 7.)

The deputy moved behind the Honda and conducted a traffic stop. (*Id.* ¶ 8) The deputy made contact with the driver and sole occupant of the Honda, Yang, and advised Yang of the purpose for the stop. (*Id.*) Yang presented the deputy with a paper "Interim Driver License" issued from the State of California and a New York Driver license (707541070) with a hole punched through the license. (*Id.*)

The deputy asked Yang whether there was anything illegal in his vehicle and Yang stated that there was not. (*Id.* ¶ 9.) When asked whether Yang would mind if the vehicle was searched, Yang answered, "No," and exited the vehicle from the driver's side door. (*Id.*) Yang then opened the driver's side rear sliding door and stated, "Go ahead." (*Id.*) As the van door was opened, the deputy observed that the middle row of seats had been removed from within the vehicle. (*Id.*) When asked why the seats were taken out, Yang stated that earlier he had moved a television. (*Id.*)

The deputy observed a factory manufacturer's storage area in the floorboard of the vehicle. (*Id.* ¶ 11.) The storage area was situated in the middle of the vehicle, right behind the

---

[1] The parties have consented to Magistrate Judge jurisdiction in this case. (*See* Docs. 13 &17.)

[2] The facts set forth in this factual background section are taken from Plaintiff's verified complaint filed June 10, 2016. (Doc. 1 ("Compl."))

2

front seats. (*Id.*) The storage area was opened and the deputy observed a pair of tennis shoes and a black and blue Bloomingdales paper bag. (*Id.*) As the deputy reached for the bag, he observed that underneath the bag was a "Physician's Statement & Recommendation" for Yang. (*Id.*)

The deputy opened the paper bag and observed a white plastic bag tied in a knot. (*Id.* ¶ 12.) In the white plastic bag, the deputy observed the Defendant Currency, packaged in $100 bills. (*Id.*) The deputy opened the plastic bag and observed that the Defendant Currency had been wrapped with two separate, slightly translucent, white plastic bags. (*Id.*) When the deputy removed the white bag from the Bloomingdales bag, a Medical Marijuana Recommendation Identification card fell out of the bag. (*Id.*) The card was issued to Yang on September 15, 2015. (*Id.*)

Both plastic bags were opened and the deputy observed three large bundles of currency wrapped in rubber bands. (*Id.* ¶ 13.) On top of the bundles of the Defendant Currency was a handwritten note on a torn piece of paper. (*Id.*) The note appeared to read "147,000." (*Id.*) Yang was asked whether the money belonged to him. (*Id.* ¶ 14.) Yang said that it did. (*Id.*) When asked how much money was in the bag, Yang stated "$140,000." (*Id.*)

The deputy resumed his search of the vehicle and located a notepad on the center console. (*Id.* ¶ 15.) The notepad appeared to have some notations with both dollar amounts and some type of Chinese writing. (*Id.*) In the back storage area, behind the rear seat, the deputy located a one-gallon container of liquid fertilizer with the label "Bud Ignitor." (*Id.*)

At about 8:00 p.m., a narcotic canine detective arrived and utilized the narcotic detecting canine "Kash" to conduct a sniff search for the presence of the odor of narcotics. (*Id.* ¶ 18.) The detective was advised by the deputy of the nature of the traffic stop and that Yang had provided consent to the search the vehicle. (*Id.* ¶ 24.) The detective conducted a safety inspection of the vehicle for anything that could cause potential harm to Kash. (*Id.*) Kash was then directed to begin his sniff at the exterior of the vehicle. (*Id.*) Kash commenced his search at the front left corner of the vehicle, and moved to the passenger's sliding door. (*Id.*) The

detective opened the driver's side door and the passenger's sliding door and allowed Kash to enter the vehicle. (*Id.*) Kash went to the rear passenger floorboard area and continued his search. (*Id.*) Kash sniffed directly above a manufactured storage compartment located on the floorboard behind the center console and gave a positive and final response to the odor of narcotics. (*Id.*) The compartment was opened and Kash placed his head inside the compartment and gave a positive and final response to the odor of narcotics on a white plastic grocery bag inside the compartment. (*Id.*)

At approximately 8:00 p.m., a second deputy arrived on scene to provide assistance. (*Id.* ¶ 25.) The second deputy contacted Yang and determined that he spoke English but that Yang's dominant language was Cantonese. (*Id.*) The second deputy contacted a general mobile interpretation service through AT&T Translator, and was put in touch with Flora #225817, who was fluent in Cantonese. (*Id.*) The second deputy had Flora translate his conversation with Yang to Cantonese for Yang. (*Id.*)

Yang gave a confused description of his trip and the reason for his possession of the Defendant Currency. (*Id.*) Yang's story was inconsistent and vague. (*Id.*) The second deputy asked Yang from where he was coming. (*Id.* ¶ 26.) Yang stated that he was coming from Oakland and driving to San Gabriel. (*Id.*) Yang stated that he was in Oakland just for the day. (*Id.*) When asked what he was doing with so much money in his car, Yang replied that back in 2009 he was living in New York and was running a restaurant. (*Id.*) Yang explained that he loaned a friend of his, by the name of "Pak," several supply items for which Pak never paid Yang. (*Id.*) Initially, Yang tried to explain that all of the Defendant Currency did not belong to him but only part of it did. (*Id.*) Yang stated that some of the money was from Pak and that some belonged to other people to whom Yang owed money. (*Id.*) Yang then changed his story and said all of the Defendant Currency belonged to him. (*Id.*)

Yang was then asked if he knew Pak from New York, whether Yang had lent Pak the supplies in New York, and how Yang found out that Pak was in California with money for Yang to collect. (*Id.*) Yang stated that he knew Pak was in California and that he had gone to

Oakland to pick up the Defendant Currency. (*Id.*) When asked whether he met with Pak to pick up the money, Yang stated that he did not meet with Pak. (*Id.*) Yang stated he contacted Pak and Yang was supposed to meet him at an unknown parking lot; instead, a subject Yang only knew of as "Jong" arrived and gave Yang the Defendant Currency. (*Id.*) Yang continued by saying he does not know Jong and only met him that day. (*Id.*)

Yang was asked whether if he presently lived in California or in New York. (*Id.* ¶ 27.) Yang stated that he spent most of his time in New York but stayed in California. Yang was asked how he planned to move the Defendant Currency from California to New York. (*Id.*) Yang then changed his story again and said the Defendant Currency was to be used for a down payment on a house and for gas. (*Id.*) Yang also stated he was trying to bring his wife and child from China to the United States. (*Id.*) The second deputy asked Yang where he worked, which was difficult for Yang to explain. (*Id.*) All the deputy could get from Yang was that he worked as a truck driver for a warehouse. (*Id.*)

Yang was then asked why his Medical Marijuana recommendation was in the same bag as the Defendant Currency. (*Id.* ¶ 28.) Yang did not reply and only said he had been involved in a car accident and now takes marijuana for pain. (*Id.*) Yang was asked whether the Defendant Currency was from the sales of narcotics, and Yang responded it was not. (*Id.*) When asked how much money he had in his possession, Yang answered that he had $150,010.00. (*Id.*) After opening the packaging, the detective observed a white envelope that had been torn and the number 147,900 written in green ink on the torn envelope. (*Id.* ¶ 29.) This number was consistent with the total amount of the Defendant Currency the detectives seized from Yang. (*Id.*)

### III. PROCEDURAL BACKGROUND

On June 10, 2016, the Government filed a civil action for forfeiture *in rem* pursuant to 21 U.S.C. § 881(a)(6) of the Defendant Currency. (Doc. 1). On June 22, 2016, the Court issued a Warrant for Arrest of Articles *In Rem* for the Defendant Currency. (Doc. 3.) The Warrant for Arrest of the Defendant Currency was executed on June 29, 2016. (Doc. 4.)

Public notice of the action and the arrest of the Defendant Currency was published via the official internet government forfeiture site (www.forfeiture.gov) for at least 30 consecutive calendar days. (Doc. 5.) Publication began on June 21, 2016, and proof of such publication was filed with the Court on July 21, 2016. (*Id.*)

On August 4, 2016, Yang filed a Claim for the Defendant Currency. (Doc. 6.) Yang filed his Answer to the complaint on September 28, 2016. (Doc. 12.) No other person has filed a claim for the Defendant Currency.

To ascertain the basis for Yang's claim, on August 5, 2016, the United States served a set of Special Interrogatories on him pursuant to Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereafter "Supplemental Rules"). (*See* Doc. 19-1, ¶ 2 and Ex. A.) The special interrogatories sought information pertaining to "the claimant's identity and relationship to the defendant property . . . ." Supplemental Rule G(6)(a).

Yang submitted his responses to the Rule G(6) Special Interrogatories on September 28, 2016, following an initial extension of time requested by Yang's counsel. (*See* Doc. 19-1 ¶¶ 3–4 and Ex. B.) In response to Special Interrogatory numbers 6 through 9, 14, and 15, Yang stated that the Defendant Currency came from relatives for the purchase of a residence, but was still working to obtain more information which Yang stated would be provided at a later date. (*Id.* ¶ 4 and Ex. B.) In these same responses, Yang objected to several of the special interrogatories on the purported grounds that the information the Government requested was not relevant. (*Id.* ¶ 5 and Ex. B.)

Because the Answers to the Rule G(6) Special Interrogatories were incomplete in certain areas and contained boilerplate objections in others, the Government sought supplemental answers from Yang. On October 28, 2016, the United States served Yang with its First Set of Interrogatories and Requests for Production of Documents, seeking to identify the individuals whom Yang alleged gave him portions of the Defendant Currency, and to identify the real estate Yang was interested in purchasing. (*See id.* ¶ 9 and Exs. E–F.) Yang did not supplement his

answers to the Rule G(6) Special Interrogatories, and did not answer the Interrogatories or respond to the Requests for Production of Documents. (*Id.* ¶ 17.) After several failed attempts to meet and confer on the outstanding responses, on April 10, 2017, the Government filed a motion to compel further responses to the Rule G(6) Special Interrogatories, and to compel responses to the Interrogatories and Requests for Production of Documents. (Doc. 19.)

On March 3, 2017, counsel for the Government sent an email to Yang's counsel requesting Yang's availability for a deposition. (*See* Doc. 22-1 ¶ 2 and Ex. A.) Yang's counsel responded by email stating that his client understood depositions would be taken, but offered no dates of availability. (*Id.* ¶ 3 and Ex. B.) The Government noticed Yang's deposition for March 30, 2017. (*Id.* ¶ 4 and Ex. C.)

On March 22, 2017, after a hearing, the Court granted the Government's Motion to Compel. (Doc. 21.) The Court ordered Yang to provide the information requested by Special Interrogatories Nos. 2, 4, 5, 6, 7, 8, 9, 11, 14, and 15, no later than March 31, 2017. (*Id.*) The Court also ordered Yang to serve his responses to the Interrogatories and Request for Production of Documents on the United States no later than April 7, 2017. (*Id.*) On the record at the hearing, Yang's counsel indicated he was aware of the March 30, 2017 deposition.

On March 30, 2017, Yang failed to appear for his deposition. (Doc. 22-1 ¶ 5 and Ex. D.) Despite the Court's order, the Government has not received supplemental responses to Special Interrogatories Nos. 2, 4, 5,6, 7, 8, 9, 11, 14, and 15. (Doc. 22-1 ¶ 6.) The Government has also not received responses to its Interrogatories, nor to its Request for Production of Documents, as ordered by the Court. (*Id.* ¶ 7.)

The Government filed the present motion to strike and motion for default judgment on April 10, 2017. (Doc. 22.) No opposition has been filed to the Government's motion.

//
//
//
//

## IV. DISCUSSION

### A. Motion to Strike Answer

The Government argues that Yang's Claim and Answer should be stricken because he failed to comply with this Court's March 22, 2017 Order. The Court recognizes that this is a harsh sanction. However, after careful consideration of the circumstances, the Court finds that the striking of Yang's Answer and Claim is warranted.

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 37, the Court may impose sanctions against a party that fails to obey a court order to provide discovery, including "striking pleadings in whole or in part . . . ." Fed. R. Civ. P. 37(b)(2)(A)(iii). Courts have discretion in imposing sanctions. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir.1997). Before striking a pleading, and declaring default as a result, a court must consider: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011). "Where a court order is violated, the first and second factors will favor sanctions and the fourth will cut against them." *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004).

The Ninth Circuit Court of Appeals has stated that this multi-factor test is "not mechanical," *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007), and the court "need not make explicit findings regarding each of these factors," *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Rather, the test "provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096. "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether discovery violations threaten to interfere with the rightful decision of the case." *Id.* at 1097.

Finally, "[w]here the sanction results in default, the sanctioned party's violations must be due to the 'willfulness, bad faith, or fault' of the party." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (quoting *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994)). *See also Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath*, 24 F.3d at 1167. "A single willful violation may suffice depending on the circumstances." *United States v. Approximately $30,000.00 in U.S. Currency*, No. 1:13–cv–1542 GSA, 2015 WL 5097707, at *8 (E.D. Cal. Aug. 28, 2015). *See also Probuilders Specialty Ins. Co. v. Valley Corp.*, No. C10-05533 EJD HRL, 2012 WL 6045753, at *4 (N.D. Cal. Nov. 28, 2012) ("Although case-dispositive sanctions are usually reserved for repeated violations of court orders, even a single willful violation may suffice, depending on the circumstances.").

### 2.     Yang's Claim and Answer Shall Be Stricken and Default Entered.

As in most cases, the first two factors "facially favor" the Government. *See United States v. $61,000.00 in U.S. Currency*, No. 2:11–cv–09384–ODW(AJWx), 2013 WL 1867536, at *2 (C.D. Cal. May 3, 2013). Yang's discovery abuses have also caused the Government prejudice: the Government carries the burden of proof, and Yang's failure to comply with the Court's Order that he supplement his responses to the Supplemental Rule G(6) Special Interrogatories and respond to the Interrogatories and Requests for Production severely impairs the Government's ability to meet its burden of proof in this case. *See $61,000.00 in U.S. Currency*, 2013 WL 1867536, at *2.

While public policy generally favors a decision on the merits, less drastic measures here are unlikely to be effective. The Court imposed lesser sanctions in its March 22, 2017 Order, requiring Yang to provide full and complete responses to the Supplemental Rule G(6) Special Interrogatories and to respond to the Interrogatories and Requests for Production—to no avail. (*See* Doc. 21.) Indeed, it appears that Yang has abandoned his case, and Yang's failure to comply with its discovery obligations and the Court's March 22, 2017 Order—not to mention

his failure to oppose this very motion—demonstrates that a lesser sanction would likely be met with continued disinterest. *See Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *8 ("A district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances.") (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir.1999)).

Finally, it is clear that Yang's failure to cooperate in discovery could not possibly have been caused by circumstances beyond his control. By entering an appearance and contesting forfeiture in this action (Docs. 6 & 12), Yang was aware that he would be required to provide discovery to the Government. *See, e.g., $61,000.00 in U.S. Currency*, 2013 WL 1867536, at *2. It is clear that Yang's subsequent failure to answer discovery in violation of the Court's March 22, 2017 Order, and his failure to attend his duly noticed deposition, constitutes willfulness, bad faith, or fault on his part.

Based on the above, the Court finds that Yang willfully violated this Court's March 22, 2017 Order and has also abandoned his claim as he has failed to prosecute this action. *See Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *9. *Accord United States v. Approximately $88,125.00 in United States Currency*, 2013 WL 310062 (W.D.N.C. Jan.13, 2013) (Failure to produce discovery and failure to attend pretrial conference constitutes abandonment); *United States v. Reyes*, 2010 WL 547235 (E.D. Tex. Feb.10, 2010) (Failure to attend ancillary forfeiture hearing resulted in dismissal based on abandonment of claims.). Accordingly, this Court will strike Yang's Claim and Answer pursuant to Fed. R. Civ. P. 37(b)(2)(A)(iii) and direct the Clerk of the Court to enter default against Yang.

**B.      Motion for Default Judgment**

    **1.      Legal Standard**

The Government seeks judgment against the interests of Yang, and also seeks final judgment of forfeiture against all other unknown potential claimants. The Supplemental Rules themselves do not provide a procedure to seek default judgment in an action *in rem.* However,

Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

Federal Rule of Civil Procedure 55(b)(2) provides that a court has discretion to enter default judgment against a party and provides as follows:

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b)(2). In considering whether to enter default judgment, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the compliant; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–918 (9th Cir. 1987); *United States v. Approximately $30,000.00 in U.S. Currency*, No. 1:13–cv–1542 GSA, 2015 WL 5097707, at *5 (E.D. Cal. Aug. 28, 2015). *Accord Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Supplemental Rules; and the Court's Local Rules for Admiralty and

*in rem* actions. *See United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir. 1994) (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules), *superseded by statute on other grounds*.

### 2. Procedural Requirements

#### a. Sufficiency of the Complaint

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. R. G(2). With regard to the sufficiency of the factual detail of the verified complaint, the Government is not required to show a direct relationship between the proceeds of a drug crime and a specific drug transaction. Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime. *See United States v. $30,670.00*, 403 F.3d 448, 467–70 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture); *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (applying totality of the circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction); *Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *6.

Here, the Government contends that the verified complaint establishes circumstantial evidence that the Defendant Currency was furnished or intended to be furnished in exchange for a controlled substance or listed chemical and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). (*See* Doc. 22 at 8:20–25.) Pursuant to Section 881, the following is subject to forfeiture to the United States:

> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all

proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6).

The allegations of the Government's verified complaint provide sufficient circumstantial evidence to reasonably believe that the Defendant Currency constitutes "moneys" furnished or intended to be furnished in exchange for a controlled substance or was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841, *et seq.* A drug-detecting canine alerted to the presence of the odor of narcotics on the bag containing the Defendant Currency. (Compl. ¶¶ 18–24.) (Doc. 1.) Further, the Defendant Currency was discovered while searching a vehicle in which a marijuana recommendation card and a gallon of "Bud Ignitor" (a liquid fertilizer) were found. (*Id.* ¶¶ 12–15.)

"In the absence of assertion of interests in the Defendant Currency, the Court will not question the facts supporting its forfeiture . . . ." *Approximately $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *6. The Court therefore finds that the facts, as alleged, provide a sufficient connection between the Defendant Currency and illegal drug activity to support a forfeiture.

### b. Notice by Publication

Subject to certain exceptions not present here, the Supplemental Rules require the Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and identify the name of the government attorney to be served with the claim and answer. Fed. R. Civ. P. Supp. R. G(4)(a)(ii)(A)–(C). This notice requirement may be satisfied by posting a notice on an official internet government forfeiture site for at least 30 consecutive days. Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C).

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days. (Doc. 5.) The Government filed a Declaration of Publication stating that notice had been created and published on the forfeiture website for 30 days, beginning on June 21, 2016. (Doc. 5.) A copy of the notice was attached to the Declaration of Publication, and it described the property with reasonable particularity by the amount of the Defendant Currency. (Doc. 5 p. 3.) The notice clearly stated the time requirements to file a claim and an answer. (Doc. 5, p. 3.) Further, the notice provided the name of the attorney to be served with any claim and answer. (Doc. 5, p. 3.) Thus, the Supplemental Rule's notice-content requirements have been satisfied. Fed. R. Civ. P. Supp. R. G(4)(ii)(A)–(C). Additionally, the notice was published for 30 consecutive days from June 21, 2016, through July 20, 2016, on the forfeiture website, which satisfies the Supplemental Rule's notice requirements with regard to frequency and means. (Doc. 5, p. 4.)

### c. Personal Notice

When the Government knows the identity of the property owner, the Due Process Clause of the Fifth Amendment requires "the Government to make a greater effort to give him notice than otherwise would be mandated." *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998). In such cases, the Government must attempt to provide notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v. United States*, 534 U.S. 161, 168 (2002); *see also* Fed. R. Civ. P. Supp. R. G(4)(b). "Reasonable notice, however, requires only that the [G]overnment attempt to provide actual notice; it does not require that the [G]overnment demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States* 417 F.3d 1189, 1197 (11th Cir. 2005); *Real Property*, 135 F.3d at 1316.

The Supplemental Rules indicate that the Government must send notice of the forfeiture action "to any person who reasonably appears to be a potential claimant on the facts known to the government." Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must include the following

information: the date when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and the name of the government attorney to be served with the claim and answer. *Id.*

Although the Government contends that it provided "direct notice" to Yang on June 22, 2016 (Doc. 22 at 9:18–19), there is no indication on the docket that any such personal notice was provided. However, the Court finds that Yang had actual notice of this forfeiture action, as evidenced by the Claim and Answer he filed in the proceeding. (*See* Docs. 6 & 12.) Supplemental Rule G(4)(b)(v) provides that "[a] potential claimant who had actual notice of the forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." *See United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him with notice."); *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 36 (1st Cir. 2001) (noting if a party has "actual knowledge of ongoing forfeiture proceedings from other sources, inadequacies in the notice afforded by the government will not work a deprivation of due process"); *United States v. 2000 Freightliner Tractor*, No. 02:07-cv-221, 2007 WL 2461786, at *1 n.1 (S.D. Tex. Aug. 24, 2007) (noting that claimant could not oppose forfeiture on the ground that the government failed to send the required direct notice when claimant had actual notice of the forfeiture action). The Court therefore deems any failure by the Government to directly notify Yang immaterial because Yang nonetheless acquired actual notice of the forfeiture. *See United States v. Real Property Located at 7212 Longboat Drive, Johnston, Polk County, Iowa*, No. 4:12-CV-00484, 2013 WL 12147733 (S.D. Iowa Feb. 20, 2013). *Cf. United States v. 630 Ardmore Drive*, 178 F. Supp. 2d 572, 579 (M.D.N.C. 2001) (concluding that dismissal of a civil forfeiture complaint for failure by the government to follow the requisite notice provisions would only be appropriate if the claimant "suffered prejudice from not receiving a notice of the complaint").

#### d. The Time to File a Claim or an Answer

Where, as here, notice was published but direct notice was not sent to the Claimant or the Claimant's attorney, a claim to an interest in or a right in a forfeiture action must be filed with the Court "no later than 30 days after final publication of newspaper notice or legal notice under Rule G(4)(a) or no later than 60 days after the first day of publication on an official internet government forfeiture site." Fed. R. Civ. P. Supp. G(5)(a)(ii)(B). Here, Yang timely filed a Claim and Answer, but they have been stricken and the Court has directed that his default be entered. Because the time to file and Claim or an Answer has passed, no one has standing to oppose the forfeiture.

#### e. Conclusion

The Court finds that, with the exception of the direct notice requirement of Supplemental Rule G(4)(b)(i) from which the Claimant has suffered no prejudice, the Government has met the procedural requirements applicable to civil *in rem* forfeiture actions as set forth in 18 U.S.C. § 983, the Supplemental Rules, and the Local Rules for the U.S. District Court for the Eastern District of California. This favors the entry of default judgment and the issuance of a final judgment in forfeiture to vest in the United States all right, title, and interest in the Defendant Currency.

### 3. Discretionary *Eitel* Factors

Beyond satisfaction of the procedural requirements, the discretionary *Eitel* factors outlined by the Ninth Circuit also favor granting the Government's motion for default judgment. First, the Government would be prejudiced by the denial of its motion, spending additional time and effort litigating an action in which in which the Claimant has ignored Court orders and has abandoned his claim. Second, the Government's claims appear to have merit. Third, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem*, including the filing of a sufficient complaint. Fourth, although the money that was seized and subject to forfeiture is of a substantial value, such alone does not warrant denial of the Government's motion. Fifth, there are no genuine disputed issues of material fact. Sixth, there

is no evidence that the abandonment of his case is due to excusable neglect.  Finally, although merits-based decisions are always preferred, it is not practical, as here, where the Claimant has abandoned his claim and willfully disobeyed a Court order.  Accordingly, there is no impediment to default judgment sought by the Government, and the Court will grant the motion.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Government's Motion to Strike the Claim and Answer of Yin Ye Yang and Motion for Default Judgment and Final Judgment of Forfeiture (Doc. 22) is GRANTED;

2. Yin Ye Yang's Claim and Answer (Docs. 6 & 12) are STRICKEN;

3. The Clerk of Court shall enter default against Yin Ye Yang;

4. Final judgment of forfeiture pursuant to 21 U.S.C. § 881(a)(6), forfeiting all right, title, and interest in the Defendant Currency to the United States is GRANTED; and

5. Within ten (10) days, the Government shall submit a proposed final judgment of forfeiture consistent with this order.

IT IS SO ORDERED.

Dated: **May 31, 2017**              /s/ *Sheila K. Oberto*
                                     UNITED STATES MAGISTRATE JUDGE